**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

BRIAN ARVANS )
                                       )
             Plaintiff, )             Case No. 1:20-cv-06570
                                         )
v. )             Hon. Andrea R. Wood
                                         )
                                         )             Magistrate Judge Heather K. McShain
DEPOSITORS INSURANCE COMPANY, )
                                         )
             Defendant. )

**PLAINTIFFS BRIAN ARVANS' MEMORANDUM**
**OF LAW IN OPPOSITION TO MOTION TO DISMISS**

**ROMANUCCI & BLANDIN, LLC**

Antonio M. Romanucci
David A. Neiman
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000
aromanucci@rblaw.net
dneiman@rblaw.net

Of Counsel:

John S. Spadaro
JOHN SHEEHAN SPADARO, LLC
54 Liborio Lane
Smyrna, DE 19977
(302) 235-7745
jspadaro@johnsheehanspadaro.com

*Attorneys for plaintiff*

Plaintiff Brian Arvans respectfully opposes Depositors' motion to dismiss. Mr. Arvans' detailed claims bear no resemblance to the "conclusory" allegations posited by Depositors. When the complaint's well pled allegations are taken as true — as they properly must be, Depositors' insistence on taking them as false notwithstanding — the complaint states viable theories of recovery for the company's "insurance-company-windfall" approach to premium rebates.

## A. The Applicable Legal Standard

In the aftermath of the Supreme Court's decisions in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the applicable pleading standards remain generous to plaintiffs. On a Rule 12(b)(6) motion, the Court treats a complaint's factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Indeed, *Iqbal* itself continues the requirement that district courts assume the truth of "well-pleaded allegations." *Iqbal*, 129 S. Ct. at 1950. Moreover, under *Twombly*, a plaintiff need not plead with extensive detail, nor need she meet any heightened pleading standard not already required under Rule 9(b): "Here . . . we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Seventh Circuit has described the plausibility standard thus:

> "Plausibility" in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. *** As we understand it, the [Supreme] Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen.

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (emphasis in original).

1

The purpose of a Rule 12(b)(6) motion, then, is not to decide the merits, but merely to test the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To accomplish this, the Court reads the complaint as a whole. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so that the defendant is given fair notice of the claim "and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In addition, and when taken as true, the complaint's factual allegations must raise the possibility of relief beyond a speculative level. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). These are "easy-to-clear hurdles." *Id.*

### B. The Complaint's Allegations

This proposed class action has been brought on behalf of all Illinois residents who were auto policyholders of defendant Depositors Insurance Company as of March 1, 2020, and who have thereafter continued to be Depositors policyholders. Plaintiff Brian Arvans is a Depositors policyholder. He challenges the fairness of Depositors' program of COVID-related premium relief, alleging that it has been "grossly inadequate and designed to secure for Depositors an unearned and unfair windfall." Compl. ¶24.[1]

The complaint incorporates detailed data compiled by the Consumer Federation of America.[2] This data confirms that "[t]he practical effect of the COVID-19 crisis and the State of Illinois' response thereto has been to dramatically empty Illinois' roads of vehicle traffic." Compl. ¶18. The Consumer Federation thus reports that vehicle miles traveled in Illinois dropped by:

---

[1] For the Court's convenience, a copy of the complaint is attached as Exhibit A.

[2] The Consumer Federation of America is a nonprofit association of over 250 consumer groups. Part of the Center for Economic Justice, the CFA works to advance the interests of consumers through research, advocacy, and education. *See* Compl. ¶18 n.6.

2

- 42% during the seven-day period from March 15, 2020 to March 21, 2020;

- 67% during the seven-day period from March 22, 2020 to March 28, 2020;

- 67% during the seven-day period from March 29, 2020 to April 4, 2020;

- 67% during the seven-day period from April 5, 2020 to April 11, 2020;

- 68% during the seven-day period from April 12, 2020 to April 18, 2020; and

- 64% during the seven-day period from April 19, 2020 to April 25, 2020.

*Id.* ¶18. Of course, when fewer people drive fewer miles, fewer accidents — and, therefore, fewer auto insurance claims — are the result. *Id.* ¶19. The COVID-19 pandemic has thus led to a dramatic reduction in Illinois auto claims, including claims submitted to Depositors. *Id.* ¶¶19-20.

Insurance rates are set to cover future expected claims and expenses. Auto insurers develop rates by extrapolating from recent experience with premium payments, claims submitted, claim settlement expenses, and other data, and then projecting future claims from that data. Compl. ¶21. But due to COVID-19 restrictions, Depositors' assumptions about future claims in Illinois became dramatically overstated when, in March 2020, the state's roads emptied, and the frequency of accidents dropped precipitously. This rendered Depositors' premiums grossly excessive, not just for new policyholders going forward, but also for existing policyholders. *Id.* ¶22.

Recognizing the windfall in premiums that the auto insurance industry would reap as a result of COVID-19, many insurers provided premium relief to their policyholders. For example, the State Farm companies, which have the largest market share for auto insurance in the U.S., gave their policyholders a 25% credit on premiums for the period from March 20, 2020 to May 31, 2020. Compl. ¶23. By contrast, the premium relief offered by Depositors to its Illinois policyholders has been inadequate, and designed to secure for the company an unfair windfall. *Id.* at ¶24. Specifically, Depositors has provided an arbitrary, one-time refund of $50 per policy (for

3

personal auto policies active as of March 31, 2020) for the months of April and May 2020. *Id.* at ¶25. This refund compares unfavorably to most premium relief programs established by other Illinois auto insurers in response to the COVID-19 crisis. *Id.* at ¶26.

Depositors is part of the Allied group of insurance companies, and ultimately part of the Nationwide family of companies.[3] In communicating its premium relief to Illinois policyholders, Nationwide's CEO said that a COVID-related refund was "simply the right thing to do," given that "drivers are making the right choice to stay off the road."[4] These Internet representations are properly subject to judicial notice. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 810 (2019) (upholding district court's denial of motion to dismiss based in part on judicial notice of defendant's website content). They were obviously intended to placate policyholders, and discourage them from challenging the relief as deficient, by leading them to believe that the Nationwide companies (including Depositors) *had* in fact done "the right thing" — which was decidedly *not* the case.[5]

---

[3] *See* https://www.nationwide.com/personal/about-us/affiliated-companies/ (last visited Dec. 9, 2020).

[4] Https://news.nationwide.com/nationwide-provides-covid-19-auto-premium-relief50-rapid-relief-premium-refund-for-personal-lines-auto-customers/?utm_campaign=c19&utm_source=nwhp&utm_content=refundbanner (last visited Dec. 9, 2020).

[5] Paragraph 49 of the complaint alleges additional (and equally misleading) characterizations of Depositors' premium rebate. At this writing, Mr. Arvans' counsel is unable to find these additional representations anywhere on the Internet. If they were never made, one would naturally expect Depositors to say so; but it has not. In any event, paragraph 49 alleges that Depositors told policyholders that by implementing its COVID-related refunds, the company was "doing what's right" for them. This representation is substantially identical to the assertion, on the Nationwide group's website, that the refund was "the right thing to do."

## ARGUMENT

### I. MR. ARVANS HAS PLED A LEGALLY COGNIZABLE CLAIM FOR CONSUMER FRAUD

Count II of the complaint alleges consumer fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, or "ICFA."[6] Seeking dismissal, Depositors says that Mr. Arvans has failed to plead his ICFA claim with particularity. But claims of *unfair* conduct (as opposed to deceptive conduct) are not even subject to a heightened pleading standard:

> [O]ur next question is whether the complaint adequately alleges that Hill's and PetSmart committed a deceptive or unfair practice. These are separate categories; deceptive conduct is distinct from unfair conduct. A claim under the Consumer Fraud Act may be premised on either (or both), but the two categories have different pleading standards. If the claim rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud. *** On the other hand, "[a] plaintiff may allege that conduct is unfair . . . without alleging that the conduct is deceptive." To determine whether a practice is unfair, Illinois courts consider three factors: whether it "offends public policy"; is "immoral, unethical, oppressive, or unscrupulous"; or "causes substantial injury to consumers." *** And because fraud is not a required element, Rule 9(b)'s heightened pleading standard *does not apply*.

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738-39 (7th Cir. 2019) (emphasis added; internal quotation omitted). *And see id.* at 739 (reiterating that "an unfair-practices claim has no fraud element and therefore is not subject to a heightened pleading standard.")

---

[6] The ICFA provides that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,1 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

Depositors' attack on the ICFA claim fails for this reason alone. Though Depositors distorts the complaint's allegations — stating (falsely) that "Plaintiff . . . fails to allege how the plaintiff's premium refund was 'inadequate' or unfair'" — the complaint alleges that the company's premium relief was "designed to secure for Depositors an unearned and unfair windfall." Compl. at ¶24. The complaint likewise alleges that "[a]n arbitrary $50 credit falls far short of the relief that any fair and reasonable actuarial analysis would require." *Id.* at ¶25. And within Count II (the ICFA count), plaintiffs expressly allege that the company concealed from its policyholders "the inadequacy and unfairness" of the relief program. *Id.* at ¶39. Again, the particularity requirement does not apply to these allegations.

That aside, the ICFA claim was indeed pled with particularity. To satisfy the particularity requirement, a plaintiff must allege the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019). The complaint plainly alleges that the offending misrepresentations were made by Depositors. The press release announcing that relief (which, under *Goplin*, should properly be subject to judicial notice) is dated April 9, 2020 — thereby providing the time, place, content, and method of communication. Just as in *Vanzant*, "[n]othing more is needed." *Vanzant* at 739.

Depositors repeatedly characterizes its extension of premium relief as voluntary and gratuitous. But as a matter of law, it was neither. As the complaint makes clear, "When fewer people drive fewer miles, fewer motor vehicle accidents — and, therefore, fewer auto insurance claims — are the result." Compl. ¶19. That being the case, Illinois law affirmatively required at least some form of premium relief. This is because a duty of good faith and fair dealing is implied in every contract, including auto insurance contracts. *See J&B Steel Contractors, Inc. v. Iber &*

6

*Sons, Inc.*, 162 Ill. 2d 265, 278 (Ill. 1994). In other words, if COVID presented the company with the prospect of a major windfall, then premium relief could not possibly be gratuitous; it was required as a matter of fairness.

But even if the relief program is viewed as voluntary, Depositors was not free to speak deceptively about it. Under Illinois law, "a party may assume a duty to disclose information accurately by its conduct." *Union Nat. Bank & Tr. Co. of Joliet v. Carlstrom*, 134 Ill. App. 3d 985, 989 (3d Dist. 1985). In *Carlstrom*, for example, a bank's decision to "voluntarily [give] a detailed description of the [consumer's] dealings with the bank" gave rise to "a duty not to deliberately conceal or misrepresent." *Id.* Thus, even if Depositors acted gratuitously (though it did not), it could not lawfully conceal that the relief it characterized as "the right thing to do" was in fact a windfall for the company.

Depositors cites *Couch on Insurance* for the proposition that no refund of premium is required once the risk attaches. However, another familiar insurance treatise refers to this as the "***early*** general rule," while also noting that "th[is] early general rule not allowing a refund once the risk attaches may no longer be the general rule." Eric M. Holmes, 5-33 *Appleman on Insurance 2d* § 33.1 (2011) (emphasis added). It should be noted, too, that Illinois law does ***not*** treat the entirety of an auto insurance premium as earned and nonrefundable the moment the policy is placed — or indeed, at any time prior to the point at which the premium is actually earned ***in fact***: "In the event of the cancellation of a policy of automobile insurance, as defined in Section 143.13, by either the company or the policyholder, the company shall refund the unearned premium pro rated to the date of cancellation." 215 ILCS 5/143.12a(a). That a major auto insurer would claim

ignorance of this basic statutory provision is troubling.[7]  That it would cite decisions on life insurance, health insurance and federal deposit insurance is puzzling, but ultimately irrelevant.

Equally unavailing is Depositors' reliance on the Illinois "rebate statute," 215 ILCS 5/151. Depositors says that this statute prohibits rebates of insurance premiums under any and all circumstances.  Were Depositors correct about this, it would mean that the company committed a misdemeanor offense in providing COVID-related refunds, and that policyholders likewise committed a misdemeanor offense in accepting such refunds.[8]  And this erroneous interpretation was *briefly* the state of the law.  *See Strojny v. Am. Family Mut. Ins. Co.*, No. 07-cv-2993, 2010 WL 744258, slip op. at *7 (N.D. Ill. Feb. 26, 2010).  But in response to *Strojny*, Illinois' Director of Insurance issued the Department's Bulletin No. 2012-11, clarifying that section 5/151 governs "the giving or offering by the insurance producer[]of any rebate or other valuable consideration to the *prospective insured* as an *inducement to purchase* insurance or any renewal of coverage."  IL Ins. Bulletin No. 2012-11, 2012 WL 6684577 (Dec. 19, 2012) (Ex. B)..  The rebate at issue here is thus not governed by section 5/151, because it was not offered as an inducement to the purchase of insurance; rather, it related to insurance that had already been purchased by Depositors' policyholders.

On the issue of materiality, Depositors overlooks that a concealed fact is material "if it concerned the type of information upon which [the plaintiff] would be expected to rely in making [a] decision to act." *DOD Techs. V. Mesirow Ins. Svcs., Inc.*, 887 N.E.2d 1, 10 (Ill. Ct. App. 2008).  It should be manifest that in deciding whether to accept or challenge Depositors' premium relief,

---

[7] Consistent with section 5/143.12a, an auto insurance premium, or any part thereof, is deemed earned only for the portion of the policy period that has already expired.

[8] Subsection (1) of section 5/151 prohibits the offering or giving of premium rebates, while subsection (2) prohibits the acceptance of rebates.  Section 5/152 makes it a Class B misdemeanor to do either.

policyholders would be expected to rely on information establishing the fairness (or unfairness) of the relief. This is precisely the type of information Depositors conveyed when it characterized the $50 refund as "the right thing to do."

On the issue of proximate cause, Depositors says that Mr. Arvans failed to allege pecuniary loss. But since the funds constituting the windfall came from policyholders' pockets, if the windfall is (as alleged) unlawful, then policyholders have suffered harm. In other words, if the complaint's allegations are taken as true, then Depositors (i) exploited a deadly pandemic to claim for itself an unconscionable windfall, and (ii) misled policyholders to conceal the scheme. No reasonable observer could fail to appreciate that this misconduct, if successful in achieving its aims, would *cost policyholders money*.

## II. MR. ARVANS HAS PLED A LEGALLY COGNIZABLE CLAIM FOR COMMON LAW FRAUD

Because Depositors' arguments regarding the complaint's allegations of common law fraud echo its arguments regarding consumer fraud, Mr. Arvans relies on the rebuttal set forth above. In particular, he has shown that he pled Depositors' misconduct with particularity; that by voluntarily choosing to speak, Depositors assumed a duty to speak honestly; and that by claiming for itself an unearned windfall, Depositors caused pecuniary harm. And though Depositors says that Mr. Arvans failed to identify any false statements, the complaint clearly alleges that the company's characterization of the refund as "the right thing to do" or "doing what's right" were knowingly false. *See* Compl. at ¶¶38, 46, 51.[9] Of course, fraudulent concealment (as opposed to affirmative misrepresentation) is also actionable under Illinois law. *Trustees of AFTRA Health Fund v. Biondi*,

---

[9] Paragraph 38 of the complaint alleges that "[i]n making its offer of premium relief, Depositors represented to its Illinois auto policyholders (implicitly, if not explicitly) that such offer is fair and reasonable, when in fact it is neither." Paragraph 46 repeats that allegation. Paragraph 51 alleges that the company "knew or believed that its representations and/or omissions . . . were false and/or deceptive."

303 F.3d 765, 777 (7th Cir. 2002) (citing *Schrager v. North Community Bank*, 767 N.E.2d 376, 381-82 (Ill. Ct. App. 2002)).

Inexplicably, Depositors says that Mr. Arvans failed to allege scienter. As shown within footnote 9, *supra*, paragraph 51 alleges scienter in the plainest possible terms.

Regarding the element of reliance, the Illinois Supreme Court has recognized that in fraud cases, "various rules, mechanisms, or presumptions have been put forward for mitigating the problem of showing reliance," including, "in instances of omission . . . whether the claimant would have been influenced to act differently, if the undisclosed fact had been made known, than he in fact did." *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 341 (Ill. 1977). A reasonable factfinder could conclude that Depositors' characterizations of the premium relief — casting it as the right thing to do — were intended to induce policyholders to accept (and not challenge) the size and terms of the relief.

Depositors says that under *Toulon v. Cont'l. Cas. Co.*, 877 F.3d 725 (7th Cr. 2017), "A claim for fraudulent concealment only exists where there is a fiduciary or other special relationship of trust between the parties." Document 9 at 9. This is a misreading of *Toulon*, which recognizes that special relationships aside, a party that chooses to speak must speak honestly:

> "In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." A duty to disclose may be based on a fiduciary relationship or a relationship of trust and confidence where "defendant [is] in a position of influence and superiority over plaintiff." *Or* it may arise when a defendant tells a half-truth and then becomes obligated to tell the full truth.

*Toulon*, 877 F.3d at 737 (7th Cir. 2017) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996), and citing *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397-98 (7th Cir. 2009)) (emphasis added).

### III. MR. ARVANS HAS PLED A LEGALLY COGNIZABLE CLAIM FOR BAD-FAITH BREACH OF CONTRACT

Depositors' claim that Illinois law categorically precludes any cause of action for bad-faith breach of insurance contract is a bridge too far. To be sure, in *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513 (Ill. 1996) the Illinois Supreme Court declined to uphold a claim for bad faith where the insured alleged unreasonable denial of a homeowners claim — a claim for first-party benefits under the insurance policy. The Court noted that under 215 ILCS 5/155, insureds are vested with statutory remedies for an insurer's unreasonable delay in settling claims against the insured by third parties. *Cramer* at 518-25. The duty to settle third-party claims "arises because the policyholder has relinquished defense of the [underlying] suit to the insurer," so that the policyholder "depends upon the insurer to conduct the defense properly." *Id.* at 525. But as the Court noted in *Cramer*, "[t]his reasoning . . . does not apply to first-party claims [like homeowners claims] . . . which do not involve liability insurance." *Id.* For first-party claims, "[t]he policyholder does not need a new cause of action to protect them from insurer misconduct," because the policyholder can simply "sue for the proceeds due under the policy." *Id.*

Just as the reasoning that underlies section 155 has no application to first-party insurance claims, the dynamic surrounding first-party claims — where the policyholder can sue for proceeds under the policy — has no application here, because this case does not remotely involve a claim for insurance benefits (whether third-party or first-party in nature). If Depositors is indeed exploiting the COVID pandemic to seize a multimillion-dollar windfall, a lawsuit seeking payment of insurance proceeds is not the answer: the former has nothing to do with the latter. *Cramer* and its progeny do not apply.

Depositors' assertion that Mr. Arvans has pled bad faith in conclusory fashion should likewise be rejected. Again, Mr. Arvans has pled that the company intentionally misled its policyholders in time of crisis, for no other purpose than to claim for itself a large and improper windfall. Such allegations are the opposite of conclusory; and if true, they constitute bad faith.

## IV. MR. ARVANS HAS PLED A LEGALLY COGNIZABLE CLAIM FOR UNJUST ENRICHMENT

Depositors says that the plaintiffs' claim for unjust enrichment must fail because the dispute is governed by their Depositors insurance policies. But this argument contradicts Depositors' insistence that the plaintiffs have no remedy under their policies. Nor does Depositors cite any policy provision governing premium rebates.

Depositors also argues that the claim for unjust enrichment fails because the plaintiffs' fraud claims fail. Here again, the plaintiffs rely on their rebuttal to Depositors' arguments regarding the complaint's allegations of consumer fraud and common law fraud — both of which state viable claims for fraud. At the same time, it should be noted that unjust enrichment can be claimed even in the absence of fraud or deception: "Usually, unjust enrichment results from wrongdoing, such as actual fraud or the breach of a fiduciary duty, but it is possible to be unjustly enriched without having done anything wrong. For instance, a person, innocent of any wrongdoing, could be unjustly enriched if a benefit were conferred on that person by mistake." *Tummelson v. White*, 47 N.E.3d 579, 584-85 (Ill. Ct. App. 2015) (citation omitted). All that is required is that a defendant be enriched at the plaintiff's expense. *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1043 (Ill. Ct. App. 2015) ("A cause of action based upon unjust enrichment does not require fault or illegality on the part of [the] defendant; the essence of the cause of action is that one party is enriched and it would be unjust for that party to retain the enrichment") (internal quotation omitted).

Finally, Depositors argues that unjust enrichment contemplates a benefit to the defendant and a detriment to the plaintiff. But again, the complaint repeatedly alleges that the company's COVID-related premium relief constituted a windfall at policyholders' expense. Compl. at ¶¶23, 24, 31, 57.

## V. MR. ARVANS' CLAIM FOR DECLARATORY RELIEF SHOULD BE UPHELD

Depositors' only argument regarding the count for declaratory relief is a unilateral declaration of victory. Because, for the reasons explained above, Mr. Arvans has pled viable claims for consumer fraud and common law fraud, Depositors' argument should be rejected.

## VI. THE FILED RATE DOCTRINE DOES NOT APPLY

Depositors' argument regarding the filed rate doctrine is contrary to Illinois law:

> In Illinois, insurers such as Allstate are free to establish auto insurance rates in response to their individual assessments of economic and market conditions. The Director has not been given any administrative authority to set, approve, or disapprove of those rates. Under the current scheme in Illinois, the auto insurance rates filed by Allstate, or any other auto insurance company, are not subject to regulatory approval by the Department of Insurance. Thus, the filed rate doctrine is not applicable.

*Corbin v. Allstate Corp.*, 140 N.E.3d 810, 816 (Ill. Ct. App. 2019). *Corbin* also notes that in *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601 (7th Cir. 2013), the Seventh Circuit cast doubt on Depositors' "filed rate" analysis:

> In its opinion, the Seventh Circuit questioned whether the filed rate doctrine applied to the facts of the case, and cast doubt on the district court's reasoning, noting that while the insurer was required to file its insurance rates with the [Insurance] Department, it was "not at all clear that the Department has the authority to approve or disapprove property-insurance rates."

*Corbin* at 818 (citing and quoting *Cohen*, 735 F.3d 601, 607-08 (7th Cir. 2013)). The *Corbin* court thus concluded that the filed rate doctrine does not apply to auto insurance rates because they are not subject to regulatory approval by the Department of Insurance:

> In Illinois, insurers such as Allstate are free to establish auto insurance rates in response to their individual assessments of economic and market conditions. The [Illinois Insurance] Director has not been given any administrative authority to set, approve, or disapprove of those rates. Under the current scheme in Illinois, the auto insurance rates filed by Allstate, or any other auto insurance company, are not subject to regulatory approval by the Department of Insurance. Thus, the filed rate doctrine is not applicable.

*Id.* at 816.

Depositors tries to distinguish *Corbin* on the basis that the plaintiff's allegations in that case targeted Allstate's use of a "non-risk-related factor" in setting premiums. But the court's rationale was not based on any distinction between risk-related and non-risk-related factors. Rather, it was based on the inapplicability of the filed rate doctrine generally, the Insurance Director's lack of enforcement power, and the court's own competence in dealing with allegations of unfair and deceptive conduct:

> In this case, plaintiffs have alleged violations of the Consumer Fraud Act based on Allstate's failure to disclose its use of "elasticity of demand" as a non-risk-related rating factor in its filings with the Department and its communications with customers regarding the renewal of auto policies. Plaintiffs allege that Allstate had engaged in certain business practices that are deceptive and unfair. *** [T]he Director has authority to consider and make findings as to whether a company is engaging in an unfair or deceptive practice . . . but the Director has no enforcement authority. If the Director issues a report charging a violation based on an unfair or deceptive practice that is not defined, and the practice is continuing in nature, the Director may, through the Attorney General, file a complaint in the [Illinois] circuit court. Section 432 of the unfair practice section of the Code provides: "The powers vested in the Director by this Article shall be additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices hereby declared to be unfair or deceptive." Therefore, under this provision, the Director does not have primary or exclusive enforcement authority with respect to deceptive practices by insurance companies.

14

> \*\*\* [T]he plaintiffs are challenging deceptive business practices that are not defined or enumerated in section 424 of the Code. The alleged deceptive practices are not unique to the insurance industry. Allstate has not shown that the Director or the Department of Insurance has any specialized knowledge or technical expertise with regard to the deceptive practices alleged. The Director does not have primary or exclusive authority in the area of regulating deceptive practices by insurance companies. Moreover, the allegations of unfair and deceptive business practices and unjust enrichment come within the experience and conventional competence of the Illinois courts.

*Corbin*, 140 N.E.3d at 816-17. Here, just as in *Corbin*, the complaint's allegations of unfair and deceptive conduct are not unique to the insurance industry. Here, just as in *Corbin*, there has been no showing that the Department of Insurance has any specialized knowledge or technical expertise where fraudulent representations are concerned. Here, just as in *Corbin*, the Department of Insurance has neither primary nor exclusive authority — indeed, if the Department were to find that Depositors engaged in the alleged misconduct, its recourse would be to the courts. And here, just as in *Corbin*, the complaint's allegations of unfair and deceptive conduct and unjust enrichment are within the "conventional competence" of the courts.

## CONCLUSION

For the reasons set forth above, plaintiff Brian Arvans respectfully requests that Depositors' motion be denied in its entirety.

Respectfully submitted,

/s/ David A. Neiman
Antonio M. Romanucci
David A. Neiman
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
(312) 458-1000
aromanucci@rblaw.net
dneiman@rblaw.net

December 11, 2020                                    *Attorneys for plaintiff*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on December 11, 2020, he caused the foregoing to be filed with the Clerk of the U.S. District Court for the Northern District of Illinois, and thus a copy of the this pleading will be served on all counsel of record by the Clerk's CM/ECF system.

/s/ John S. Spadaro

9670