**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN ARVANS, | : | |
| | : | Case No.: 1:20-cv-06570 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEPOSITORS INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT DEPOSITORS INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

**I.      Introduction.**

Plaintiff's Opposition confirms what the Complaint already suggests: Plaintiff's claims are implausible on their face, and have no legal (or factual) basis. Plaintiff's counsel, for example, now says he can no longer locate the alleged statements Depositors made, *i.e.*, the statements which purportedly formed the basis for Plaintiff's claims. Instead, Plaintiff now asks this Court to take judicial notice of a statement made by the CEO of non-party Nationwide that a refund was the "right thing to do." Plaintiff says this is consistent with his Complaint allegation that Depositors stated it was "doing what's right" for its members. Regardless of who made these statements or whether they are contained in the Complaint, there is nothing deceptive, unfair, or fraudulent about them. Saying something was the "right thing to do" is not and has never been the basis for an ICFA claim, or any other claim, under Illinois law.

Furthermore, as predicted, Plaintiff is unable to identify any statutory, contractual or regulatory obligation requiring Depositors to refund any premium whatsoever, let alone a refund in some unidentified, greater amount. In fact, this Court and Illinois state courts repeatedly have rejected similar arguments regarding alleged unfair or deceptive premiums and pricing. Plaintiff

notably ignores virtually all of the legal authority cited by Depositors and fails to cite any contrary legal authority in support of his claims. There is none. Plaintiff's claims should be dismissed as a matter of law.

## II.     Depositors' Alleged Statements.

Given the uncertainty expressed by Plaintiff in his Opposition, Depositors will attempt to bring some clarity regarding the statements of Depositors at issue in this lawsuit. As an initial matter, in Paragraph 41 of the Complaint, Plaintiff attributes certain statements to Depositors. These statements, however, were cut-and-pasted from one of the many lawsuits Plaintiff's counsel has filed against **other** insurers. *See, e.g., Roby v. Liberty Mut. Personal Ins. Co.*, Case No. 1:20-cv-06832 (N.D. Ill.), Complaint ¶ 41 (Doc. 1-1, PageID 27). Here, in his Opposition, Plaintiff does not argue Depositors made these statements, or that there was anything deceptive, unfair, or fraudulent about them.

In Paragraph 25 of the Complaint, Plaintiff alleges Depositors stated it was offering "a one-time premium refund of $50 per policy for personal auto policies active as of March 31, 2020." In its Opposition, Plaintiff does *not* argue there was anything deceptive, unfair, or fraudulent about this statement.

In Paragraph 49 of the Complaint, Plaintiff alleges Depositors "stated that the 'one-time payment of $50 per policy . . . is equivalent to an average savings of 15 percent for two months.'" Again, in its Opposition, Plaintiff does *not* argue there was anything deceptive, unfair, or fraudulent about this statement.

Finally, in Paragraph 49 of the Complaint, Plaintiff alleges "Depositors expressly represented to its Illinois auto policyholders that 'our focus is on our members, not shareholders. We balance doing what's right for our members while maintaining our position of financial strength

to ensure we deliver on our promises to our members.'" Compl. ¶ 49. Plaintiff's counsel now says he cannot locate this alleged statement on the Internet. *See* Opp. at p. 4 n.5. Plaintiff now further says in his brief that the CEO of non-party Nationwide publicly stated the premium refund was the "right thing to do." *See* Opp. at 4. Plaintiff says this is consistent with Depositors' statement that it was "doing what's right." *Id.* at 4 n.3. Plaintiff appears to contend that it was these statements that were somehow deceptive, unfair or fraudulent. Such statements, however, have never been actionable under Illinois law, as discussed below.[1]

### III. Argument.

#### A. Plaintiff's ICFA Claim Fails As A Matter Of Law.

Plaintiff contends it was somehow deceptive or unfair for Depositors to state it was "doing what's right" for its members, even though Plaintiff now admits he cannot find this statement. Similarly, Plaintiff cites to a statement from the CEO of non-party Nationwide that the refund was the "right thing to do." Opp. at 4. There is nothing deceptive or unfair about these statements. This Court repeatedly has held that such expressions of opinion are non-actionable. *See, e.g., Nevarez v. O'Connor Chevrolet, Inc.*, 426 F.Supp.2d 806, 815 (N.D. Ill. 2006) (statement regarding "best . . . rate available" not actionable "because it is only an expression of opinion") (citing Illinois cases); *Tylka v. Gerber Products Co.*, 1999 WL 495126 at * (N.D. Ill. July 1, 1999) ("you can't buy a better food than Gerber" and other similar "vague, all encompassing, communications" held to be non-actionable opinion) (citing Illinois cases); *Rosenthal Collins Group, LLC v. Trading Technologies*

---

[1] Depositors has no obligation to admit or deny any of Plaintiff's allegations as part of its Motion to Dismiss as Plaintiff suggests. Nonetheless, there is no mystery surrounding communications to policyholders regarding the premium refund. Examples of such communications were included with Depositors' submission to the Illinois DOI, a copy of which Depositors attached as Ex. C to its Motion. *See* Doc. 9-3 (PageID 116-118).

*Int'l, Inc.*, 2005 WL 3557947 at *11 (N.D. Ill. Dec. 26, 2005) ("Opinions and puffery are not actionable under the ICFA").

Furthermore, Plaintiff does not argue that he ever saw or relied upon such statements, or that he would have done anything differently if he had been aware of the alleged deceptiveness of these statements. Courts routinely dismiss ICFA claims under similar circumstances. *See Toulon v. Cont. Cas. Co.*, 877 F.3d 725, 740 (7th Cir. 2017) ("the Complaint does not include an affirmative statement that, had she known about the premium increase in advance, Toulon would not have bought the Policy"); *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134. 154-155 (S.Ct. Ill. 2002) ("Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefited the environment or improved engine performance"); *Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 779 (7th Cir. 2004) ("There is no evidence that IRI told Stone to depend on the publication, and Stone fails to establish that it relied on the brochure in lieu of, for example, reading the language of the insurance policy"). Although Depositors cited these cases in its Motion, Plaintiff offers no response whatsoever in his Opposition.

Plaintiff also argues, generally and in self-serving conclusory fashion, that the refund amount was "unfair." Plaintiff further argues that an act or practice may be "unfair" under the ICFA if it violates public policy. Opp. at 5. An act or practice only violates public policy, however, where "'the practice violates statutory or administrative rules establishing a certain standard of conduct.'" *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118 at *6 (N.D. Ill. June 9, 2020). Plaintiff has failed to identify any such statutory, regulatory, or contractual obligation requiring Depositors to refund any premium to Plaintiff, let alone provide a refund in some greater amount. Unable to do so, Plaintiff contends that there is a duty of good faith and fair dealing implied in every

contract. Opp. at 6. Yet, good faith and fair dealing "has never been an independent source of duties for the parties to a contract[.]" *WorldCom, Inc. v. Transcend Allegiance, Inc.*, 1998 WL 111636 at *4 (N.D. Ill. March 6, 1998); *In re VTech Data Breach Lit.*, 2017 WL 2880102 at * 9 (N.D. Ill. July5, 2017) (same). Rather, it is only "used to "construe the parties' intent in the administration of the contract." *WorldCom* at * 4; *see also VTech* at *9 (good faith and fair dealing is "used to interpret a contract"). Here, Plaintiff fails to identify any contractual provision entitling it to a refund. That is because there is no statutory, regulatory or contractual obligation to provide a refund. Accordingly, there is no violation of public policy.[2]

Plaintiff further argues that an act or practice may be "unfair" where it is oppressive or causes substantial injury. Opp. at 5. An act or practice is not "oppressive," however, simply because the plaintiff thinks prices are too high. Both the Seventh Circuit and Illinois courts have rejected similarly vague and conclusory allegations. *See,e.g., Rockford Mem'l Hosp. v. Havrilesko*, 368 Ill.App.3d 115, 124 (Ill. App. 2006) (allegation of "unconscionably high prices is not, by itself, unfair within the meaning of the Act"); *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134. 139-140 (S.Ct. Ill. 2002) (rejecting argument plaintiff paid inflated gas prices); *Toulon v. Cont. Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017) (rejecting policyholder's assertion that defendant insurer violated ICFA by raising policy premiums); *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 822 (7th Cir. 2018) (plaintiff cannot rely on a "generalized 'market theory' of causation" claiming the defendant "inflate[d] the cost of its product" and "misled consumers"). Again, although Depositors cited these cases in its Motion, Plaintiff fails to address them in his Opposition.

---

[2] Plaintiff also disagrees with the general principle that "an insured may not have any part of his or her premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned[.]" Motion at 6 (Doc. 9, PageID 84) (citing cases). Plaintiff, however, cites no contrary legal authority and makes no effort to distinguish the cases cited by Depositors.

5

"Substantial injury," in turn, only exists where the alleged injury is one that the plaintiff "could not avoid." *Toulon v. Cont. Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017); *Mullen v. GLV, Inc.*, 2020 WL 5630455 at *11 (N.D. Ill. Sept. 20, 2020) (same). Here, as Plaintiff admits, Plaintiff could have cancelled his policy and received a pro rata return of his premiums. *See* Opp. at 7 (citing 215 ILCS 5/143.12a(a)). Plaintiff does *not* allege that he cancelled his Policy, or that he made any effort to obtain alternative insurance. The Seventh Circuit and this Court repeatedly have dismissed claims under similar circumstances. *Toulon* at 741 ("Toulon cannot establish substantial injury because she could have avoided the harm by purchasing a different long-term care insurance policy from another company"); *Batson v. Live Nation Ent't, Inc.,* 746 F.3d 827, 834 (7th Cir. 2014) (plaintiff could have avoided ticket fee by "opting instead for alternative entertainment"); *Mullen* at *11 ("Mullen had the option of avoiding injury by enrolling her children in other youth volleyball clubs in the area"); *see also Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 420 (Ill. S.Ct. 2002) ("Plaintiffs do not allege . . . they were coerced into signing the leases . . . [or] that they lacked reasonable alternatives in the marketplace to acquire automobiles"). Again, Plaintiff fails to address this legal authority.

Lastly, should any doubt remain, an ICFA claim also requires Plaintiff to allege actual damages proximately caused by the allegedly deceptive or unfair act or practice. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Here, Plaintiff fails to identify any such damages in his Opposition, let alone in his Complaint. In sum, Plaintiff's ICFA claim should be dismissed as a matter of law.

    **B.**    **Plaintiff's Fraud Claim Fails As A Matter Of Law.**

Plaintiff's common law fraud claim fails for many of the same reasons as his ICFA claim. First, "doing what's right" and "do the right thing" are not false statements. At most, they are non-

6

actionable expressions of opinion. Plaintiff fails to identify any statement of fact by Depositors that is false.

Second, Plaintiff fails to allege that he actually relied on any statement by Depositors. Plaintiff does *not* dispute this in his Opposition. Instead, Plaintiff argues that "fraudulent concealment (as opposed to affirmative misrepresentation) is also actionable under Illinois law." Opp. at 9. Yet, as Depositors pointed out, a claim for fraudulent concealment only exists where there is a fiduciary or other special relationship of trust between the parties. *Toulon v. Cont. Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017). As the Seventh Circuit has held, "no fiduciary relationship exists between an insurer and an insured" under Illinois law. *Id.* Plaintiff does *not* dispute this point. Instead, Plaintiff only says that if a party chooses to speak, it must do so honestly. This is merely restating, however, the first element of a fraud claim: in order to constitute fraud, a statement must be false. As discussed, Plaintiff has failed to identify any false statements whatsoever.

Lastly, Plaintiff fails to allege any reliance resulted in any damages to himself. Specifically, he fails to allege that he – or any other policyholder – took or did not take any actions based on Depositors' statements. Again, Plaintiff does not dispute this point anywhere in his Opposition. Plaintiff's fraud claim should be dismissed as a matter of law.

### C. Plaintiff's Bad Faith Breach Of Contract Claim Fails As A Matter Of Law.

Plaintiff concedes that, in *Cramer*, the Illinois Supreme Court held "bad faith" breach of contract is not an available independent cause of action. *See Cramer v. Ins. Exchange Agency*, 174 Ill.2d 513, 527 (S.Ct. Ill. 1997) ("To allow a bad-faith action would transform many breach of contract actions into independent tort actions"). Plaintiff attempts to distinguish *Cramer* by arguing

that it only applies in the context of insurance coverage disputes. The Illinois Supreme Court, however, has rejected this argument:

> Although *Cramer* involved section 155 of the Insurance Code (215 ILCS 5/155 (West 1994)), the opinion's rationale was not confined to that context. The court's description of the covenant of good faith and fair dealing as a rule of construction, rather than an independent source of tort liability, was not limited to the area of insurance law, and is as apt here as it is in other circumstances.

*Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001). There is no cause of action for "bad faith" breach of contract under Illinois law.

And, in any event, Plaintiff fails to identify any provision of his insurance policy – the contract at issue here – that allegedly was breached by Depositors. *Burke v. 401 N. Wabash Venture, LLC*, 2010 WL 2330334 at *2 (N.D. Ill. June 9, 2010) ("plaintiff asserts that defendant breached a contract, but plaintiff fails to point to any contract provision that was breached. The Court fails to see how . . . a plaintiff could state a claim for breach of contract without alleging which provision of the contract was breached"); *Cushman & Wakefield, Inc. v. Illinois Nat'l Ins. Co.*, 2015 WL 2259647 at *8 (N.D. Ill. May 11, 2015) (same); *Ronald McDonald House Charities of Chicagoland v. Winning Charities Ill., LLC.*, 2013 WL 5907668 at *5 (N.D. Ill. Nov. 4, 2013) (same). Again, although Depositors raised this point in its Motion, Plaintiff fails to offer any response whatsoever. Plaintiff's "bad faith" breach of contract claim should be dismissed as a matter of law.

        **D.**      <u>**Plaintiff's Unjust Enrichment Claim Fails As A Matter Of Law**</u>.

Plaintiff again fails to address Depositor's arguments or legal authority. It is undisputed that unjust enrichment does *not* apply where "there is a specific contract that governs the relationship of the parties" and that an insurance policy is such a contract. *Toulon v. Cont. Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017) (applying Illinois law). Unable to dispute this basic point,

8

Plaintiff argues there is no policy provision requiring Depositors to refund any premium to Plaintiff. Opp. at 12 ("Nor does Depositors cite any policy provision governing premium rebates"). This, of course, does not change the fact there is a contract between the parties that governs their relationship, and therefore bars an unjust enrichment claim as a matter of law. But it also demonstrates unequivocally that Plaintiff's claims are frivolous – despite bringing a claim for "breach of contract," **Plaintiff now admits there is no policy provision requiring a refund of premiums**. This admission, by itself, should put an end to Plaintiff's case.

Plaintiff also does *not* dispute that, where underlying claims for fraud or violation of the ICFA fail as a matter of law, a claim for unjust enrichment fails as well. *Toulon* at 742. Lastly, Plaintiff still fails to identify any benefit conferred on Depositors to the detriment of Plaintiff. To the contrary, Plaintiff does *not* dispute that it was actually he who received a benefit when Depositors' *voluntarily* refunded premium to him. Plaintiff's unjust enrichment claim should be dismissed as a matter of law.

### E. Plaintiff's Declaratory Relief Claim Fails As A Matter Of Law.

Plaintiff does not dispute that his claim for declaratory relief lacks any independent basis, and should be dismissed if his other claims fail. Accordingly, Plaintiff's declaratory relief claim should be dismissed as well.

### F. Plaintiff's Claims Should Be Dismissed Under The Filed-Rate Doctrine.

Plaintiff does not dispute that Illinois courts recognize the filed-rate doctrine. Instead, relying on *Corbin*, Plaintiff argues that it does not apply in this case because the DOI purportedly lacks expertise or enforcement authority. That is not true here. The DOI plainly has the authority and expertise to examine and review premium refunds. In fact, Plaintiff does not dispute any of the following:

- Illinois law requires auto insurers to file their rates with the Illinois Department of Insurance ("DOI"), and to maintain rate data for review by the DOI's Property and Casualty Compliance Unit. *See* 50 IL Adm. Code 754.10 *et seq.*

- The DOI also has regulatory authority to "examine and investigate" whether any insurer "has been or is engaged . . . in any unfair or deceptive act or practice[.]" 215 ILCS 5/425.

- This regulatory authority includes the ability to conduct hearings, and issue cease and desist orders and other penalties. *See* 215 ILCS 5/425 to 5/431.

In other words, the DOI plainly has investigatory and enforcement authority here. Furthermore, the DOI has exercised that authority with respect to premium refunds:

- The DOI previously has indicated it will monitor and provide guidance to insurers regarding whether certain actions constitute an impermissible "rebate." *See, e.g.*, IL Bulletin No. 2012-11 at *4 (attached to Motion as Ex. A).

- Consistent with this authority, the Illinois DOI has publicly stated that insurers must file with the DOI their pandemic-related premium refund proposals. *See* April 6, 2020 Chicago Sun Times, Auto Insurers Offer Refunds at p. 3 (attached to Motion as Ex. B).

- In accordance with Illinois law and DOI Director Muriel's statements, Depositors in fact filed its premium refund proposal with the DOI on or about April 17, 2020. *See* Motion Ex. C. Depositors' submission was reviewed and marked as "Closed-Filed" by the DOI without objection. *Id.* at p.1.

Again, Plaintiff fails to address these points in his Opposition. Unable to dispute any of these points, Plaintiff instead resorts to mischaracterizing Depositors' argument. Plaintiff, for example, argues that Depositors is relying on 215 ILCS 5/151 for the proposition that Illinois law prohibits rebates "under any and all circumstances." Opp. at 8. This is not accurate. As discussed

10

above, Depositors is noting that Illinois law generally prohibits premium rebates, but it is the DOI that monitors and has authority to approve rebates *in specific circumstances*. Plaintiff does not dispute this point. And here, the proposed refund was submitted by Depositors to the DOI in advance of the approval. Absent that approval, Depositors would not have provided any refund.

The simple reality is that it is Plaintiff who is attempting to bypass the DOI's review of Depositors' premium refund proposal and is seeking to impose a different premium refund/rate through this lawsuit. That is improper, and this Court should have no part of it. This Court should reject Plaintiff's effort to do so and should dismiss Plaintiff's claims pursuant to the filed-rate doctrine.

**IV.     Conclusion.**

Plaintiff's Opposition demonstrates that Plaintiff's claims are implausible and should be dismissed. While the Complaint was legally flawed, Plaintiff's Opposition removes all doubt that Plaintiff's theory borders on the frivolous. Plaintiff ignores almost entirely the legal authority cited by Depositors, and fails to identify any contrary legal authority supporting his claims. Indeed, as discussed, Plaintiff fails to identify any contractual, statutory or regulatory basis to challenge the refunds provided by Depositors. Given the lack of any such legal basis, Plaintiff's claims should be dismissed with prejudice as a matter of law.

Dated: December 30, 2020                           Respectfully Submitted,

                                                   s/ *Jonathan M. Cyrluk*
                                                   Jonathan M. Cyrluk (ARDC #6210250)
                                                   Steven C. Moeller (ARDC #6290263)
                                                   Carpenter Lipps & Leland LLP
                                                   180 N. LaSalle Street, Suite 2105
                                                   Chicago, IL 60601
                                                   Direct: (312) 777-4820
                                                   Fax: (312) 777-4839
                                                   cyrluk@carpenterlipps.com
                                                   moeller@carpenterlipps.com

Michael H. Carpenter (admitted *pro hac vice)*
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Tel: (614) 365-4100
Fax: (614) 365-9145
carpenter@carpenterlipps.com

Aneca E. Lasley (*pro hac vice* forthcoming)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700 (Phone)
(614) 365-2499 (Fax)
Aneca.Lasley@squirepb.com

Petrina A. McDaniel (*pro hac vice* forthcoming)
SQUIRE PATTON BOGGS (US) LLP
1230 Peachtree St NE, Suite 1700
Atlanta, Georgia 30309
Phone: 678-272-3207
Petrina.McDaniel@squirepb.com

*Attorneys for Defendant Depositors Insurance Company*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 30th day of December, 2020, a true and correct copy of the foregoing was served by electronic mail on the following persons via the Court's CM/ECF system:

> John S. Spadaro
> JOHN SHEEHAN SPADARO, LLC
> 54 Liborio Lane
> Smyrna, DE 19977
> Tel: (302) 235-7745
> jspadaro@johnsheehanspadaro.com
>
> *Attorney for Plaintiff Brian Arvans*

     *s/ Jonathan M. Cyrluk*
     Jonathan M. Cyrluk
     *One of the Attorneys for Defendant*
     *Depositors Insurance Company*