# **EXHIBIT 2**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MASHALLAH, INC., an Illinois Corporation and RANALLI'S PARK RIDGE, LLC d/b/a HOLTS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 20 C 5472 |
| WEST BEND MUTUAL INSURANCE COMPANY, a Wisconsin Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge**:

Before the Court is West Bend Mutual Insurance Company's ("West Bend") Motion to Dismiss Plaintiffs' Mashallah Inc. ("Mashallah") and Ranalli's Park Ridge ("Ranalli's") (collectively, "Plaintiffs") Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants West Bend's motion.

## BACKGROUND

The Court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiffs' favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

Plaintiff Mashallah is a small Chicago-based jewelry business. Plaintiff Ranalli is a small Chicago-area restaurant. Plaintiffs' businesses were interrupted and are

suffering due to COVID-19. Accordingly, Plaintiffs now seek coverage under "all-risk" commercial property insurance policies (the "Policies") issued and sold to them by Defendant West Bend—a mutual insurance company.

The Policies provide several types of coverage.[1]

First, Plaintiffs seek coverage under the Policies' Business Income provisions, which provide that West Bend will pay for "actual loss of Business Income" sustained because of a "direct physical loss of" Plaintiffs' business premises. Dkt. #1-1 at 23; Dkt #1-2 at 43.

Second, Plaintiffs seek coverage under the Policies' Extra Expense provisions, which provide coverage for "extra expenses" that would not have been "incurred if there had been no direct physical loss." Dkt. #1-1 at 25; Dkt #1-2 at 43.

And third, Plaintiffs seek coverage under the Policies' Civil Authority provisions, which provide coverage for lost business income sustained because of a civil authority that "prohibits access to" the premises. Dkt. #1-1 at 26; Dkt #1-2 at 44.

Aside from these provisions, each Policy has a slightly different Virus Exclusion. The Mashallah Virus Exclusion provides that West Bend will not cover "loss or damage caused directly or indirectly by . . . any virus . . . that induces or is capable of inducing physical distress, illness or disease. . ." Dkt. #1-1 at 34, 37. The Mashallah Virus

---

[1] The Policies are central to and attached to the Complaint and are therefore a part of the pleading for the purposes of this Motion. Fed. R. Civ. P. 10(c); *Foshee v. Daoust Const. Co. et al.,* 185 F.2d 23, 25 (7th Cir. 1950).

2

Exclusion provides that such "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 34. The Ranalli's Virus Exclusion provides that West Bend will not pay for "loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." Dkt. #1-2 at 54.

Against this backdrop, Plaintiffs seek coverage under the terms of the Policies. In Count I, Plaintiffs seek a declaratory judgment that West Bend is obligated to cover Plaintiffs' claims. In Count II, Plaintiffs allege that West Bend breached the terms of the Policies. In Count III, Plaintiffs allege a bad-faith denial of insurance coverage in violation of Illinois law, 215 ILCS 5/155. In the alternative, Plaintiffs seek a rebate of their insurance premiums. Specifically, in Count IV, Plaintiffs allege that West Bend has been unjustly enriched by collecting premiums while not covering Plaintiffs. And in Count V Plaintiffs allege that West Bend violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") for similar reasons.

## **LEGAL STANDARD**

In this motion, West Bend moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss based on Federal Rule of Civil Procedure challenges the sufficiency of the facts alleged in the complaint and not the merits of the case. Fed. R. Civ. P. 12(b)(6); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true all well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank,*

3

*FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The factual allegations in the complaint must state a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The complaint does not require detailed factual allegations but must provide sufficient factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must provide a defendant with fair notice of the claim's basis and also must be facially plausible. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere conclusory statements or a "formulaic recitation of the elements of a cause of action" are insufficient pleadings to overcome a Rule 12(b)(6) motion to dismiss. *Id.* at 678-79.

The parties do not dispute that Illinois law applies. In Illinois, "the construction of an insurance policy is a question of law. An insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. However, a policy provision is not rendered ambiguous simply because the parties disagree as to its meaning." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *2 (N.D. Ill. 2020) (cleaned up).

4

**DISCUSSION**

**1. The Virus Exclusions Preclude All Coverage**

The Court recently decided a very similar case in *Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co. of America*., 2021 WL 81659 (N.D. Ill. 2021). There, we held that the "plain language of the Virus Exclusion is dispositive" and that it is therefore unsurprising that federal courts have "nearly unanimously" held that exclusions like those here bar coverage. *Id.* at *3. Since our decision in *Riverwalk*, other courts nationwide are in accord. *See, e.g., Mena Catering, Inc. v. Scottsdale Ins. Co.,* 2021 WL 86777, at *9 (S.D. Fla. 2021) (collecting cases); *Palmdale Estates, Inc. v. Blackboard Ins. Co.*, 2021 WL 25048, at *3 (N.D. Cal. 2021) (concluding that the "weight of authority" supports the application of the virus exclusion).

The Virus Exclusions here are no different.

The Mashallah Virus Exclusion provides that West Bend will not cover "loss or damage caused directly *or indirectly* by . . . *any* virus . . . that induces or is capable of inducing physical distress, illness or disease. . ." Dkt. #1-1 at 34, 37. COVID-19 is clearly *any virus* that *directly or indirectly* caused damage to Mashallah's business. The Mashallah Policy also provides that such "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 34.

The Ranalli's Virus Exclusion is a bit different, but the conclusion is still the same. That Policy provides that West Bend will not pay for "loss or damage caused by

5

***or resulting from any virus*** . . . that induces or is capable of inducing physical distress, illness or disease." Dkt. #1-2 at 54 (emphasis added). Here, Ranalli's business losses no doubt "result from" COVID-19, which is a virus.

Given the clear language in both Policies, it is peculiar that Plaintiffs open their response brief by referring to these exclusions as "purported" virus exclusions. To the contrary, the Virus Exclusions are far from imaginary. They are indeed clear and free from any ambiguity. In *Riverwalk*, we held that language like that here is "clear, sweeping, and all-encompassing." *Riverwalk Seafood Grill Inc.*, 2021 WL 81659, at *3. We reaffirm that holding here.

Plaintiffs also respond by arguing that West Bend must affirmatively establish that the exclusions apply. True. But that is exactly what West Bend has done here. And, contrary to Plaintiffs' rather broad and repeated rule statement, the Court only needs to defer to the plaintiff "where the provision is ambiguous." *Founders Ins. Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Ambiguous means that the plain text of the exclusion is "susceptible to more than one *reasonable* interpretation." *Id.* (emphasis added). Here, there is *no reasonable interpretation* that would allow coverage. Both policies preclude coverage for "any virus" and no one can credibly argue that COVID-19 is not "any virus." Thus, the Court need "not strain to find an ambiguity where none exists." *Id.* The policy provisions are also not ambiguous simply because the parties disagree about the meaning. *Id.*

6

To get around the virus exclusion, Plaintiffs argue that COVID-19 itself is not the "dominant" or "efficient" cause of Plaintiffs' damages because Governor Pritzker's COVID-19 orders are an independent intervening cause. The "efficient" or "dominant" cause rule is the default causation rule in Illinois. *Bozek v. Erie Ins. Grp.*, 2015 IL App (2d) 150155, ¶ 22. Generally, causation can be analyzed under one of four approaches, with the "dominant" cause rule being the second most relaxed. The *Bozek* court explains:

> Many coverage cases have sought to determine, in the absence of specific policy language, exactly how substantial or sufficient a given causal nexus needs to be in order to provide coverage. There are four basic stops on the causal spectrum of insurance coverage: (1) most broadly, but-for or minimally sufficient causation, providing coverage if a covered cause contributes to the loss, regardless of its dominance or order in a chain of events; (2) in the middle, efficient or dominant proximate causation, providing coverage if a risk of loss that is specifically insured against in the insurance policy sets in motion, in an unbroken causal sequence, the events that cause the ultimate loss, even though the immediate cause in the chain of causation is an excluded cause, or if it is simply the dominant cause; (3) more narrowly, immediate causation, providing coverage only where the covered cause is the last, immediate cause in the chain of causation; and (4) most narrowly, regardless of order, if any excluded cause contributes to the loss, there is no coverage.

*Id.* at ¶ 21 (cleaned up). The Illinois default rule can be further relaxed via an "anticoncurrent-causation clause," under which "there is no coverage if even one contributing cause is an excluded event." *Id.* at ¶ 23. Thus, the question that matters when analyzing an anti-concurrent causation clause is whether an excluded cause "was one contributing cause of the loss at issue." *Temperature Serv. Co., Inc. v. Acuity*, 2018 WL 1378345, at *7 (N.D. Ill. 2018).

7

Despite the minor differences in both Virus Exclusions, both Plaintiffs lose even under the "efficient" or "dominant" causation approach. In applying this approach, we must ask: was COVID-19 "simply the dominant cause" that set the other causes in motion in an "unbroken causal sequence?" *See Bozek*, 2015 IL App (2d) 150155, ¶ 21.

Obviously. "Here, there is no genuine dispute that the activity of a virus, namely COVID-19, set government restrictions in motion, and is therefore the efficient proximate cause of Plaintiffs' claimed losses." *Ba Lax, LLC v. Hartford Fire Ins. Co.*, 2021 WL 144248, at *4 (C.D. Cal. 2021); *accord Boxed Foods Co., LLC v. California Capital Ins. Co.*, 2020 WL 6271021, at *4 (N.D. Cal. 2020). This is because the "causal links represented by the virus and the Order are interlocking – even intertwined." *LJ New Haven LLC v. AmGUARD Ins. Co.*, 2020 WL 7495622, at *5 (D. Conn. 2020). Indeed, the closure orders "would not exist absent the presence of COVID-19." *Boxed Foods Co.*, 2020 WL 6271021, at *4. After all, the closure orders "*only came about sequentially as a result of* the COVID-19 virus spreading rapidly throughout the community." *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, (W.D. Tex. 2020) (emphasis added). Thus, COVID-19 was the "primary root cause of Plaintiffs' businesses temporarily closing." *Id.*; *see also Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 2020 WL 5642483, at *2 (N.D. Cal. 2020) (citing *Diesel Barbershop* approvingly and adding that closure orders "were issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion.").

8

Our conclusion as to this argument is in line with other courts nationwide. *See Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *9 (S.D. Fla. 2020) (collecting cases).

Mashallah's claims fail for an additional and independent reason. The Mashallah Policy, but not the Ranalli's Policy, has an anti-concurrent causation clause. *See* Dkt. #1-1 at 34 ("loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."). "This language demonstrates the parties' intent to contract around the efficient proximate cause doctrine, language which courts have held is enforceable." *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 2020 WL 6501722, at *4 (D.N.J. 2020). Thus, applying the clear language of this provision, Mashallah cannot recover even if the Governor's COVID-19 orders contributed concurrently to the loss. *See Temperature Serv. Co., Inc.,* 2018 WL 1378345, at *6.

Plaintiffs' other arguments do not complicate the otherwise clear Virus Exclusions. First, the argument that COVID-19 must be physically present at Plaintiffs' premises to trigger coverage is flatly contrary to the plain text of the Virus Exclusions, which contain no such requirement. *See LJ New Haven LLC*, 2020 WL 7495622, at *6; *N&S Rest. LLC*, 2020 WL 6501722, at *3. And second, the argument that business income coverage is now illusory because of COVID-19 also fails because a "policy need not provide coverage against all possible liabilities; if it provides coverage against

9

some, the policy is not illusory." *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 362 Ill. App. 3d 745, 754 (2005), *aff'd*, 223 Ill. 2d 407 (2006).

For the foregoing reasons, Plaintiffs claims based on the Policies are barred. Counts I and II are therefore dismissed. Because there is no coverage, Plaintiffs' bad-faith denial of coverage claim under Section 155 of the Illinois Insurance Code also fails. *See Martin v. Illinois Farmers Ins.*, 318 Ill. App. 3d 751, 764 (1st Dist. 2000) ("a defendant cannot be liable for section 155 relief where no benefits are owed."). Count III is therefore dismissed accordingly.

## 2. Plaintiffs Are Also Not Entitled To A Premium Rebate

Plaintiffs, in the alternative, argue that they are entitled to a rebate of the insurance premiums they paid under either the ICFA or a common law theory of unjust enrichment. At a high level, Plaintiffs' claims fail because there is nothing unfair or unscrupulous about holding Plaintiffs to the terms of the Policies they bought, which do not include coverage for "any virus" like COVID-19. The Court's conclusion here is buttressed by the general rule of insurance law that:

> an insured may not have any part of his or her premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned. This rule is based upon just and equitable principles, for the insurer has, by taking upon itself the peril, became entitled to the premium.

5 Couch on Ins., § 79:7 (3d Ed. 2014); *accord Euclid Nat. Bank v. Fed. Home Loan Bank Bd.*, 396 F.2d 950, 951 (6th Cir. 1968); *Fleetwood Acres v. Fed. Hous. Admin.*,

171 F.2d 440, 442 (2d Cir. 1948); 44 Am. Jur. 2d Insurance § 909. And, for the reasons discussed below, no argument made by Plaintiffs upsets this general rule.

Plaintiffs seemingly recognize this reality and argue upfront that the "unique circumstances" of COVID-19, a "world-altering event," "demand that the law respond with flexibility to do justice" Dkt. #26 at 31. But no matter how sympathetic the Court is to the plight of small businesses during this once-in-a-century pandemic, the Court cannot create law where none exists. To do so would impermissibly "place the whole rights and property of the community under the arbitrary will of the Judge . . ." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 332 (1999) (quoting Story, J., 1 Commentaries on Equity Jurisprudence § 19, at 21). Nor is the Court empowered to "improvise" because of COVID-19. *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 30 (2020) (Gorsuch, J., concurring); *cf. Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (observing that while the Constitution has "taken a holiday during this pandemic" "it cannot become a sabbatical.").

Against this backdrop, the Court will address Plaintiffs' ICFA claim and unjust enrichment claim in turn.

A. ICFA Claim

To state a claim under ICFA, plaintiffs must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade

11

or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 190 (2005) (cleaned up).

Plaintiffs argue that West Bend violated the ICFA by misrepresenting and omitting facts regarding the scope of coverage. This contention fails for two reasons.

First, Plaintiffs have not alleged that West Bend undertook "a deceptive act or practice." *Avery,* 216 Ill. 2d at 190–91. In short, Plaintiffs' story simply does not add up because they purchased their Policies in 2019—well before the COVID-19 pandemic was a ubiquitous feature of daily life. *See* Dkt. #1 at ¶ 58 ("[r]eports of a novel Coronavirus ("COVID-19") pandemic emerged out of Wuhan, China in early 2020."). Thus, West Bend could not have made affirmative representations or omissions about something it did not yet know exists.

Plaintiffs are correct that they renewed their Policies in 2020 after everyone knew about the pandemic. But Plaintiffs renewed their Policies *after* they had already been denied coverage for their COVID-19 claims. Any damage is therefore not "proximately caused by the deception" because Plaintiffs were not "actually deceived." *Avery,* 216 Ill. 2d at 190, 199; *accord Villasenor v. Am. Signature, Inc.*, 2007 WL 2025739, at *5 (N.D. Ill. 2007). After all, Plaintiffs already knew West Bend's position that the Policies did not cover COVID-19. They presumably knew that too because of the clear terms of the Policies, which preclude coverage for "any virus" like COVID-19.

12

West Bend is also correct that Plaintiffs' claims are mere "breach-of-contract allegations dressed up in the language of fraud" and "cannot support statutory or common-law fraud claims" as a result. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011). Indeed, under ICFA, when "allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Id.* at 399. Plaintiffs do not even attempt to do so here. The Court acknowledges that small businesses are suffering, but the right solution is not to use equity to rewrite an otherwise clear contract. At bottom, Plaintiffs contracted for Policies with clear Virus Exclusions and must be bound by the terms they agreed to.

In response, Plaintiffs urge the Court to conclude that West Bend's practices "offend public policy" or that they are "immoral, unethical, oppressive, or unscrupulous." The Court struggles to see how West Bend did anything wrong. Both sides entered in an arms-length insurance contract that expressly excludes coverage for "any virus" like COVID-19. All West Bend is trying to do now is enforce this contract. That is not immoral or unscrupulous for the simple reason that it is not unfair to hold a party to the terms of the contract they signed.

Plaintiffs respond that this makes coverage illusory because West Bend could use COVID-19 as an excuse to limit business income coverage in the event of a covered loss like a fire or vandalism. Admittedly, because Plaintiffs' businesses are suffering, the recoverable amount of lost business income might be lower. But that does not mean

13

the Policies are truly "empty" or "optional." *States Self-Insurers Risk Retention Grp., Inc. v. City of Waukegan*, 2018 WL 1378346, at *7 (N.D. Ill. 2018). The Policies would still cover losses "in at least some circumstances" and are therefore "not illusory." *Id.* at *9 (citing *W.E. Erickson Constr., Inc. v. Chi. Title Ins. Co.*, 641 N.E.2d 861, 864 (Ill. App. 1994)). Of course, Plaintiffs would like more coverage, but a contract is not rendered illusory simply because Plaintiffs would like more coverage. *See id.*; *accord Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 137 Ill. App. 3d 84, 98 (1985) ("coverage was not false or 'phantom' merely because there was no present exposure."), *aff'd*, 114 Ill. 2d 278 (1986).

Plaintiffs make three other arguments, all of which fail.

First, Plaintiffs point out that some auto insurers like AARP have chosen to rebate premiums because of COVID-19. But Plaintiffs cite no authority that requires the Court to make AARP's act of corporate grace a legal mandate.

Second, Plaintiffs argue that they were forced to buy insurance like any prudent business would. But Plaintiffs fail to allege that West Bend somehow forced them to obtain this insurance or, for that matter, any insurance at all. Presumably, Plaintiffs could have shopped around for a policy without a virus exclusion.

And third, Plaintiffs argue that because West Bend is a mutual insurance company, they should be able to compel West Bend to rebate premiums. Yet, the rights of a member of a mutual company are "delineated by the terms of the contract, and come from it alone." *Andrews v. Equitable Life Assur. Soc. of U.S.*, 124 F.2d 788, 789

14

(7th Cir. 1941). Here, the terms of the Policies state that distributions are available to "the extent and upon the conditions fixed and determined by the Board of Directors." Dkt. # 1-1 at 5. Plaintiffs thus cannot unilaterally compel a distribution according to the clear terms of the contract. *See Andrews*, 124 F.2d at 789; *Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*, 2016 IL App (1st) 152662, ¶ 35 (observing that "such matters are typically left to the discretion of the company's board of directors"). Plaintiffs' authorities, *e.g., Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, 566 F.3d 541, 542 (5th Cir. 2009), do not change the game because in those cases the company had *already elected* to make distributions. Plaintiffs provide the Court with no authority that supersedes the clear terms of the contract, which govern here. *Andrews*, 124 F.2d at 789.

For the foregoing reasons, Plaintiffs cannot maintain an ICFA claim. This claim is therefore dismissed.

### B. Unjust Enrichment Claim

Plaintiffs' unjust enrichment claim also fails. At the outset, because Plaintiff cannot prevail on their ICFA claim, they also cannot prevail on the unjust enrichment claim. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017).

Plaintiffs claim is also foreclosed because there is an *actual contract* that governs the relationship between the parties. *Id.* "Where there is a specific contract that governs the relationship of the parties" the unjust enrichment doctrine has no application. *Id.* And, here, as in *Toulon*, there is "no question that a contract for insurance" governs the

15

relationship between Plaintiffs and West Bend. *Id.* Likewise, Plaintiffs "refer to the Policy throughout the Complaint" and "attached it as an exhibit to the Complaint." *See id.* Dismissal is therefore warranted as it was in *Toulon*.[2] *See id.*

One last point: alternative pleading cannot remedy Plaintiffs' unjust enrichment claim because this type of pleading is limited. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). "A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Id.* But it is impermissible to plead that West Bend "is liable for breaching this express contract but that if it did not breach the contract, then it owes damages for unjust enriching itself." *Id.* That is exactly what Plaintiffs are trying here. That effort, while adroit, is impermissible.

## CONCLUSION

For the foregoing reasons, the Court grants West Bend's Motion to Dismiss. Because the Virus Exclusion bars all coverage, any further amendment would be futile. Accordingly, this case is dismissed with prejudice. Civil case terminated. It is so ordered.

Dated: 2/22/2021

Charles P. Kocoras
United States District Judge

---

[2] Plaintiffs' class claims also cannot proceed because when "the plaintiff's own claim is dismissed, he can no longer be the class representative." *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 846 (7th Cir. 2017) (quoting *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994)).

16